**Glenn W. YAHNE, Appellant,**

v.

**STATE of Missouri, Respondent.**

**No. WD 52456.**

Missouri Court of Appeals,
Western District.

Feb. 25, 1997.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 1, 1997.

Application to Transfer Denied
May 27, 1997.

Randall B. Johnston, Asst. Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jefferson City, Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before ULRICH, C.J., P.J., and BERREY and SMART, JJ.

BERREY, Judge.

Glenn Yahne appeals from his conviction by a jury for possession of a controlled substance pursuant to § 195.202, RSMo 1994. Appellant alleges six points of trial court

error. Affirmed and remanded for correction of sentence.

On February 24, 1995, local authorities obtained a search warrant and searched appellant's property in Pettis County where they discovered methamphetamine, a large amount of cash and a number of drug-related items. This property was 7.6 acres in size and included a private family residence, which was under construction, a detached garage, and four mobile homes, one of which had been severely damaged by fire, and fifty-eight motor vehicles.

The investigators read the search warrant to appellant and advised him of his *Miranda* rights when they arrived. Appellant's person was searched first and $500 in cash was found. The investigators then proceeded to the padlocked garage. Appellant produced a key and the garage, which was filled with an assortment of equipment, tools, and boxes, was searched. After obtaining another key from appellant, the investigators opened a large, upright toolbox and found some tools and two locked boxes. Appellant again handed over a key to access the pair of boxes. They contained nearly $140,000 in cash. The investigators later came across another locked toolbox and, after appellant provided the key, found a triple-beam scale, two handguns and a silver metal canister. The canister held numerous clear plastic bags, several of which contained residue of a powdery substance. Laboratory tests later revealed that the bags contained 2.38 grams of methamphetamine.

Also inside the garage was found a variety of items often used in the drug manufacturing process, including small, glass bottles, a variety of glassware, a dissecting kit, a glass measuring tube, tongue depressors, among other things. Additionally, a "bong" was discovered, which is a device used for smoking marijuana. Also discovered was a jar of nicotinamide powder, which can be used to dilute the strength or purity of a drug.

Later, when asked which trailer he lived in, appellant pointed to the "northeast trailer." In that trailer and in various containers on the kitchen counter, the investigators found rolling papers, syringes, large spoons, a pair of tweezers, cotton swabs, a homemade pipe, note cards noting the prices and availability of certain chemicals, two of which are used to make methamphetamine and various other documents.

Appellant was arrested and taken to the Pettis County jail. He was interrogated until he requested an attorney. The next day, appellant was fingerprinted by a sheriff's deputy as part of the booking process. The deputy thanked appellant "for being so cooperative." Appellant responded by saying, "It's no use making it any harder on myself, I'm caught and I know it."

Appellant's pre-trial motions to suppress this statement and evidence of drug paraphernalia found on the property were denied. Similarly, the trial court denied appellant's motions in limine to suppress evidence of the cash money found in the garage and to suppress evidence of drug paraphernalia found in the northeast trailer. Appellant was convicted as a prior and persistent offender [1] and was later sentenced to twelve and one-half years imprisonment. The trial court also denied appellant's motions for acquittal during trial and his motion for new trial. This appeal followed.

■■■ Several of appellant's points on appeal assert error by the trial court in denying his pre-trial motions. Trial court rulings on motions in limine and other pre-trial motions are interlocutory and are not directly appealable. *State v. Henderson,* 826 S.W.2d 371, 374 (Mo.App.1992). "A ruling on evidence will only be preserved when it is made at trial at the time the evidence is offered." *Id.* Therefore, since appellant did object at trial to the introduction of the challenged evidence, we will treat these points as alleged errors by the trial court in admitting the evidence.

1. The trial court found appellant to be a prior and persistent offender pursuant to § 558.016 and he was sentenced accordingly. However, the trial court's written judgment failed to mention appellant's status as a prior and persistent

offender. This omission is to be corrected on remand by the entry of an order *nunc pro tunc.* Resentencing is not required. *See State v. Winters,* 900 S.W.2d 636, 641 (Mo.App.1995); Rule 29.12(c).

Trial courts have broad discretion when it comes to the admission or the exclusion of evidence at trial. An appellate court will not interfere with a trial court's ruling as to the admission or exclusion of evidence absent a clear abuse of discretion. *Id.*

Because appellant's points I and III similarly contend that the admission of items found in the garage and the northeast trailer[2] constitutes evidence of other crimes, we will consider these points together. Under point I appellant argues that the trial court erred in admitting evidence of the $140,000 in cash found on appellant's person and property. The admission of such a large sum of money in a case for possession of less than three grams of methamphetamine was, according to appellant, extremely prejudicial and far outweighed any possible relevancy. With the introduction of this evidence appellant suggests that he was "effectively charged and tried on the uncharged crime of distribution or sales of a controlled substance." Under point III appellant argues that the trial court erred in admitting drug-related items found in the garage and the northeast trailer. Appellant alleges that this is also evidence of other crimes since he was not charged with possession of *drug paraphernalia*, a separate crime under § 195.233, RSMo 1994, or with *manufacturing* a controlled substance, a separate crime under § 195.211, RSMo 1994.

Evidence of uncharged crimes is generally not admissible for the purpose of showing that the defendant has a propensity to commit such crimes. *State v. Bernard*, 849 S.W.2d 10, 13 (Mo. banc 1993). However, such evidence "is admissible if the evidence is logically relevant, in that it has some legitimate tendency to establish directly the accused's guilt of the charges for which he is on trial, and if the evidence is legally relevant, in that its probative value outweighs its prejudicial effect." *Id.* (citations omitted). Evidence is logically relevant when it tends to establish motive, intent, the absence of mistake, a common scheme or plan or the identity of the person charged with the com-

mission of the crime. *Id.* In addition, evidence of uncharged crimes is admissible to "demonstrate defendant's knowledge of particular facts, giving inference of defendant's awareness of his or her commission of the crime charged." *State v. Clover*, 924 S.W.2d 853, 855 (Mo. banc 1996). *See State v. Steward*, 844 S.W.2d 31, 35 (Mo.App.1992).

Appellant was charged with *possession of a controlled substance*. Section 195.202 provides that "it is unlawful for any person to possess or to have under his control a controlled substance." To prove the elements of this offense, the State must show (1) conscious and intentional possession of a controlled substance, either actual or constructive, and (2) awareness of the presence and nature of such substance. *State v. Purlee*, 839 S.W.2d 584, 587 (Mo. banc 1992). Circumstantial evidence may be used to prove both possession and knowledge. *Id.* In cases where, as here, there is no evidence of actual possession, constructive possession may be established by "evidence that defendant had *access to and control over* the premises where the substance was found." *Id.* at 588 (emphasis added). Other persons may have access to the area where drugs are found without destroying "the incriminating fact that a defendant has access to that area." *Steward*, 844 S.W.2d at 33.

A defendant who has exclusive control of property is deemed to have possession and control of any substance found on the property. *State v. Wiley*, 522 S.W.2d 281, 292 (Mo. banc 1975). In cases where there is joint control, a defendant is still deemed to have possession and control where there is additional evidence connecting him with the controlled substance. *Id.* (citation omitted). Here, it is uncertain whether appellant had exclusive control. But it is clear that appellant possessed the methamphetamine because it was found on his property and he provided the investigators with the keys needed to access the various toolboxes and lockboxes where the cash and drug residue were located. We now must consider

---

2. In addition to appellant's argument that the admission of drug paraphernalia constitutes evidence of other crimes, he also alleges that items found in the northeast trailer are inadmissible because of a defective search warrant. This issue is discussed in greater detail below.

whether appellant was aware of the presence and nature of the narcotic.

Appellant claims that the $140,000 was his and his wife's life savings that they had accumulated after thirty-two years of marriage. He admits that the manner in which they saved their money was somewhat unorthodox, but argues that it certainly was not illegal to maintain their savings in a locked garage rather than in a bank. We, of course, agree. Similarly, appellant argues that the items of drug paraphernalia each have innocent uses. Again, we agree. However, the discovery of the large amount of cash, drug paraphernalia and drug residue cannot be isolated from each other.[3] The State argues that the money and drug paraphernalia, when taken together, reveals that appellant was involved in the manufacture and distribution of methamphetamine and that he, therefore, necessarily had the requisite intent and knowledge to *possess* a controlled substance.

The State's position is supported by *Steward*, supra, and *State v. Flenoid*, 838 S.W.2d 462 (Mo.App.1992). In *Steward*, the defendant was convicted of possession of cocaine. In executing a search warrant at the home of the defendant and her husband, police found cocaine, Demerol, three handguns, a small scale, over $1,500 in cash and a bottle of Inositol, which is used as a cutting agent for cocaine. All of these items, among others, were introduced against her at trial. The defendant challenged the admission of this evidence on appeal, but this court found that "[t]he other drug related items ... tended to show that a drug selling operation was being run out of defendant's house, making it highly unlikely that defendant was unaware of the presence of the cocaine in her house." *Id.* at 35; *see Clover*, 924 S.W.2d at 855–56. In *Flenoid*, the defendant was also convicted of possession of cocaine. The defendant challenged the admission of the beeper and $122 in cash seized from his person. *Id.* at 467. Because the defendant carried the beeper and money at the same time as he possessed cocaine, the court held that the

challenged evidence was admissible because it was part of the *res gestae* of the charge being tried. *Id.* In addition, the court found that the evidence of the beeper and the money, "to the extent it indicated that Flenoid sold drugs, was a circumstance tending to show his knowledge and intent in possessing the cocaine, and as such was relevant and admissible." *Id.* at 468. *See also State v. Camden*, 837 S.W.2d 520, 522 (Mo.App.1992). The same can be said in the instant case of the money and the drug paraphernalia as they relate to appellant's awareness of the presence and nature of the controlled substance found in his possession.

■ Appellant claims *Steward* and *Flenoid* are distinguishable from the instant case because they both involved relatively small amounts of cash. We disagree. Here, the money is logically relevant to prove the crime of possession of a controlled substance because it was found *along with* assorted drug paraphernalia and drug residue. The admissibility of the challenged evidence thus turns on its legal relevance. It is within the trial court's discretion to determine whether the probative value of the proffered evidence outweighs its prejudicial effect. *Bernard*, 849 S.W.2d at 13. We find that the trial court did not abuse its discretion in admitting evidence of the $140,000 in cash and the drug paraphernalia. Appellant's points I and III are denied.

■ In point II, appellant argues that the trial court violated his Fifth Amendment right to remain silent and his Sixth Amendment right to counsel in admitting his post-arrest statement, "It's no use making it any harder on myself, I'm caught and I know it." Appellant suggests that this statement, made after he was fingerprinted, was unconstitutionally prompted by the sheriff's deputy who had thanked appellant "for being so cooperative" for the reason that the deputy resumed interrogation of appellant after appellant requested an attorney the day before.

■ It is true that the interrogation of a suspect must cease if he indicates that

---

**3.** In *U.S. v. Wood*, 834 F.2d 1382, 1386 (8th Cir.1987), the court said, "[e]vidence which is colorless standing alone gains a new complexion when considered with other facts that are proved, and in turn, may corroborate the conclusions drawn from other facts."

he wishes to remain silent, and, if he requests an attorney, the interrogation must cease until an attorney is present. *Miranda v. Arizona,* 384 U.S. 436, 473–74, 86 S.Ct. 1602, 1627–28, 16 L.Ed.2d 694 (1966). *Miranda* applies only when an individual is "both in custody and interrogated." *State v. Isaiah,* 874 S.W.2d 429, 436 (Mo.App.1994). Here, the interrogation did not resume because appellant's statement was voluntary. It was not a statement in response to a question or remark that the deputy should have known was "reasonably likely to elicit an incriminating response from the suspect." *Id.* (quoting *Rhode Island v. Innis,* 446 U.S. 291, 301, 100 S.Ct. 1682, 1689, 64 L.Ed.2d 297 (1980)). Point II is denied.

▆▆▆▆ Appellant next contends in point IV that the trial court erred in not suppressing evidence of drug paraphernalia found in the northeast trailer in that the search warrant did not particularly describe the property to be searched. In addition, appellant argues that the northeast trailer was beyond his property line and, as a result, outside the scope of the search warrant.

▆▆▆ The Fourth Amendment provides that "no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. It has been held that the Missouri Constitution provides "essentially the same protections found" in the Fourth Amendment. *State v. Sweeney,* 701 S.W.2d 420, 425, n. 4 (Mo. banc 1985); *see* Mo. Const. art. 1, § 15. "The particularity requirement of the Fourth Amendment protects the right to be free from unbounded general searches." *State v. Cummings,* 714 S.W.2d 877, 880 (Mo.App.1986). A search warrant must identify the place to be searched with "sufficient detail and particularity that the officer executing the warrant can readily ascertain it." § 542.276.6(4), RSMo 1994. The search warrant here reads in part:

> WHEREAS, a duly verified Application For Search Warrant has been filed before this Court, stating upon information and belief that certain items believed to be a controlled substance, stolen property and

evidence of a crime to-wit: methamphetamine, a sawed-off short-barreled rifle, a gold necklace with a gold coin, dynamite are being kept and secreted in Pettis County, Missouri upon the property of Glenn Yahne.

. . . .

> As you go north on Bennett Road from Highway 52, it is the last house on the west side of Bennett Road before Bennett Road turns west for a brief distance. The Yahne place consists of 7.6 acres, according to the Pettis County Assessor's Office. On the property, is a single story home, which is under construction. That is, it is not completed. There are numerous outbuildings, including a detached garage and several trailers. There are numerous cars, some of which are disabled. There is an above ground pool on the property.

We find that the search warrant did particularly describe the property to be searched. From the face of the search warrant it is apparent that the investigators were authorized to search the entire acreage of appellant's property and the structures thereon. It is unclear from the record whether the northeast trailer was in fact beyond appellant's property. Appellant's bald assertions that this trailer was not on his property and that he did not live in it cannot be sustained without substantiating evidence, especially since the State presented evidence to the contrary. In any event, the drug paraphernalia found in the northeast trailer is mere surplusage since the methamphetamine, money and other drug paraphernalia found in appellant's garage was sufficient to satisfy the elements of possession of a controlled substance. Point IV is denied.

▆▆▆ In point V appellant argues the trial court committed plain error in denying his motion for acquittal for the reason that the evidence was insufficient to establish beyond a reasonable doubt that he was guilty of the crime charged. We disagree.

▆▆▆ In determining the sufficiency of the evidence, a reviewing court must accept as true all the evidence favorable to the State,

including all favorable inferences drawn from the evidence and must disregard all contrary evidence and inferences. *State v. Silvey*, 894 S.W.2d 662, 673 (Mo. banc 1995). In light of our discussion above, we find no manifest injustice or miscarriage of justice and decline to review this point for plain error. Rule 30.20. Point V is denied.

Finally, appellant argues in point VI that the trial court abused its discretion in declining to grant a mistrial because one or more of the jurors might have overheard the prosecutor reveal prejudicial and damaging evidence during a bench conference about a cartoon which the court ruled inadmissible. We disagree.

A mistrial is a drastic remedy to be implemented only with the greatest caution in extraordinary circumstances. *State v. Ianniello*, 671 S.W.2d 298, 300 (Mo.App. 1984). Trial courts have broad discretion in deciding whether such a remedy is appropriate. *Id.*

At a bench conference counsel argued as to the admissibility of certain documents and a hand-drawn cartoon discovered during the search of appellant's property. As the prosecutor was arguing for the admission of the documents, the following was said:

[DEFENSE COUNSEL]: I believe the jury can hear what [the prosecutor] is saying. My secretary has told me that she can hear everything that is being said up here.

[THE COURT]: Lean over and try to whisper then. Go ahead.

A short time later, the admissibility of the cartoon was discussed. The cartoon derided the Pettis County Drug Task Force and a sheriff's deputy. The State sought to introduce the cartoon, but the trial court sustained appellant's objection, apparently because it, much like a similar cartoon which was deemed inadmissible, was "vulgar and offensive." The following exchange then took place:

[PROSECUTOR]: This picture, there's nothing vulgar about it. Yesterday you said the picture that included me was vulgar and that I had duties other than those related to enforcing drug laws. [The sher-

iff's deputy's] sole job for the last five years has been with the Pettis County Drug Task Force. This is clearly directed at her, and there's nothing obscene about it. Is it relevant to think something—

[DEFENSE COUNSEL]: I'm going to object and ask for a mistrial.

[THE COURT]: I'm not certain that the jury did hear at all, but keep your voice down.

The court sustained the objection, but did not rule on the request for mistrial. The jurors were not questioned whether or not they had heard counsel's remarks. However, there is no evidence that any of the jurors actually heard anything. In any event, there is no reason to believe that the cartoon was even significant to the case. *See Ianniello*, 671 S.W.2d at 300. A mistrial was not warranted on these facts. Point VI is denied.

We affirm appellant's conviction for possession of a controlled substance and remand for the limited purpose of correcting sentence by the entry of an order *nunc pro tunc* to include appellant's status as a prior and persistent offender.

Affirmed and remanded for correction of sentence in accordance with this opinion.

All concur.